UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│                                 │
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____            │
│ DATE FILED: MAR 2 4 2016        │
│                                 │
└─────────────────────────────────┘
```

John Hyun *et al.*,

               Plaintiffs,

–v–

Ippudo USA Holdings *et al.*,

               Defendants.

14-CV-8706 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

On October 31, 2014, John Hyun, Jordan Ricasa, Thanh Ta, Maria Francisco, and Ryan Robinett ("Named Plaintiffs") filed a complaint in the Southern District of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Art. 19 §§ 190 and 650 *et seq. See* Dkt. No. 2. After the Court granted Plaintiffs' motion to conditionally certify a FLSA collective, *see* Dkt. No. 44, 48 plaintiffs opted into this action ("Opt-In Plaintiffs", together with Named Plaintiffs, "Collective Members"). Dkt No. 117 at 1. On December 9, 2015, the parties informed the Court that they had reached a settlement. *See* Dkt. No. 106. On February 23, 2016, the parties submitted a written settlement agreement for the Court's approval, along with a letter explaining their views on the fairness of the settlement. *See* Dkt. No. 117. The settlement agreement provides for a settlement fund of $580,000[1], of which $351,878.76 would be distributed to Collective Members, $30,000 would be distributed to the six Named Plaintiffs as a service fee, and the remaining $198,121.74[2] would go

---

[1] The proposed settlement agreement would require Collective Members to keep this figure confidential. The Court will not approve this confidentiality provision for reasons discussed below.

[2] The parties note that this figure "consists of $193,333.33 in Attorneys' Fees and $4,787.91 in litigation costs." Dkt. No. 117 Ex. A at 12. Due to an apparent calculation error, the settlement states the final amount of attorneys' fees and costs of $198,115.24 instead of $198,121.74. *Id.*

1

to Plaintiffs' attorneys. Dkt. No. 117 Ex. 1 ("Settlement Agreement" or "SA") §§ 4, 11. Although the Court finds the settlement largely fair and reasonable, its approval is subject to a caveat discussed below. Approval of the settlement is therefore denied, with the understanding that if the parties resubmit a settlement agreement addressing the Court's concerns, the settlement will be approved.

I. DISCUSSION

To promote FLSA's purpose of ensuring "a fair day's pay for a fair day's work," a settlement in a FLSA case must be approved by a court or the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). As a result, Plaintiff's claims cannot be dismissed with prejudice until the Court is satisfied that the proposed settlement is "fair and reasonable." *See, e.g., Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A "fair and reasonable" settlement must "reflect[] a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86 (JS), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

For a court to properly evaluate the fairness of a proposed settlement, the parties must provide sufficient information about "the bona fides of the dispute." *Mamani,* 2014 WL 2971050, at *1 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). At minimum, this includes information on "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative

2

class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). In evaluating the proposed settlement, the Court will analyze (1) the amount of recovery for Collective Members; (2) the service awards for Named Plaintiffs; (3) attorneys' fees and costs; (4) the limited confidentiality provision; and (5) the release.

### A. Collective Members' Recovery

Under the proposed settlement agreement, up to $351,878.76 would be distributed to Collective Members. SA § 11(i). Based on a thoughtful and detailed methodology, Plaintiffs estimate that the Collective Members' maximum estimated back wages would be $683,446,62, with the possibility of additional liquidated damages. Dkt. No. 117 at 6-7. Defendants do not dispute Plaintiffs' methodology or the resulting maximum possible recovery figure, but do emphasize their defenses to Plaintiffs' claims, including the "fact-intensive" question of whether the Collective Members were, in fact, service employees. *Id.* at 6. Based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial, the Court finds that the total amount of the settlement allocated for Collective Members is a "substantial proportion of the maximum possible recovery," *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving a settlement fund constituting 25% of the maximum possible recovery), and is thus "fair and reasonable." *Wolinsky*, 900 F. Supp. 2d at 335. Based on the data and methodology described by the parties, the Court also finds that the allocation of the settlement award among Collective Members is "fair and reasonable." *See id*; *see also* Dkt. No. 117 at 3-5; Dkt. No. 117 Exs. 2, 4-8.

3

### B. Named Plaintiff Service Awards

The settlement agreement also provides for a $6,000 service award to each of the five Named Plaintiffs in this case. SA § 11(ii). A $30,000 total service award represents approximately 5% of the settlement fund, which is "well within the range of service awards recently approved in the Southern District of New York" in FLSA cases. *Mills v. Capital One, N.A.*, No. 14-CV-1937 (HBP), 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015) (collecting cases on FLSA service awards). As a result, the Court finds the requested service awards "fair and reasonable." *Wolinsky*, 900 F. Supp. 2d at 335.

### C. Attorneys' Fees and Costs

Pursuant to their contingency fee agreement with Named Plaintiffs, Plaintiffs' counsel requests a fee of $193,333.33, or one-third of the settlement fund, plus $4,787.91 in reasonable expenses. Dkt. No. 117 at 13-14. By comparison, the lodestar here would be $149,222.50. Dkt. No. 117 at 24; *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). District courts in this circuit "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). However, "the trend in this Circuit is toward the percentage method," although it is for district court to determine "the appropriate method" in a particular case. *Id.* at 417, 419 (quoting *Wal-Mart Stores*, 396 F.3d at 121).

In this case, where the parties were able to settle relatively early and before any depositions occurred, *see* Dkt. No. 117 at 9, the Court finds that the percentage method, which avoids the lodestar method's potential to "create a disincentive to early settlement," *McDaniel*, 595 F.3d at 418, is appropriate. "Fee awards representing one third of the total recovery are

common in this District." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015). As a result, the Court finds that the requested attorneys' fees are "fair and reasonable." *Wolinsky*, 900 F. Supp. 2d at 335. Plaintiffs' requested costs of $4,787.91 "are likewise reasonable and well-documented." *Gaspar*, 2015 WL 7871036, at *2; *see also* Dkt. No. 117 Ex. 10.

### D.    Limited Confidentiality Provision

Section 7 of the Settlement Agreement requires Collective Members to "keep the aggregate settlement amount ($580,000) of this Agreement confidential and not disclose, disseminate and/or publicize this aggregate settlement amount" except in certain delineated circumstances. SA § 7. Defendants argue that this provision is necessary because the aggregate settlement amount "creates a false and disproportional sense of culpability and liability." Dkt. No. 117 at 11. Defendants' interest in restricting dissemination of the aggregate settlement amount is difficult to comprehend here, as this information has already been disclosed in numerous places on the public record through ECF filings. *See* Dkt. No. 117 at 2; SA § 4. As a result, the Court finds that Defendants' interest in confidentiality is insufficient to overcome the well-settled principle that "[c]onfidentiality provisions in FLSA settlements are contrary to public policy." *Souza v. 65 St. Marks Bistro,* No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Guerra–Alonso v. W. 54 Deli. Corp.*, No. 14–CV–7247 (WHP), 2015 WL 3777403, at *1 (S.D.N.Y. May 22, 2015)) (refusing to approve a provision requiring confidentiality as to the terms of settlement agreement where those terms had been publicly docketed); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) ("[A] non-disclosure agreement in an FLSA settlement, even when the settlement papers are public[ly] available on the Court's docket, is contrary to

5

well-established public policy because it inhibits one of the FLSA's primary goals—to ensure that all workers are aware of their rights.") (internal quotation marks omitted).

For this reason, the Court does not approve section 7 of the Settlement Agreement. Pursuant to section 11 of that agreement, however, section 7 is not binding on the parties if not approved by the Court. As a result, the confidentiality provision does not require the Court to withhold approval of the settlement agreement as a whole.

### E. Release

The release in a FLSA settlement cannot "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 181). "Legitimate releases in collective action settlements may include claims not presented, but only if the released conduct arises from the same factual predicate as the settled conduct." *Gaspar*, 2015 WL 7871036, at *2. The Settlement Agreement here provides for broad "mirror releases" for Named Plaintiffs, while Opt-In Plaintiffs have a more limited release. SA §§ 5-6. The release for Named Plaintiffs requires waiver of:

> any and all . . . claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which [Named Plaintiffs] had, now have or hereafter can, shall or may have against [Defendants] that may be legally waived by agreement, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing, from the beginning of the world through the effective date of this Agreement.

SA § 5. The release for Opt-In Plaintiffs, however, merely waives the right to bring "claims . . . of any type or nature which relate to the manner/method of or amount of the payment of . . . compensation." SA Ex. B ¶ 2.

6

The release for Opt-In Plaintiffs is limited to wage-and-hour issues and is thus permissible. However, the Named Plaintiff's waiver of any claim "arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing, from the beginning of the world through the effective date of this Agreement" is far too broad because it purports to "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 181). As a result, the Court does not approve the settlement agreement's release provision relating to the Named Plaintiffs. Unlike the confidentiality provision, the Named Plaintiff release provision is not severable. As a result, the Court will not approve the settlement agreement in its current form.

## II.     CONCLUSION

Aside from the confidentiality and Named Plaintiff release issues discussed above, the Court finds the parties' settlement agreement to be fair and reasonable. Nonetheless, the Court cannot approve the settlement as currently proposed. As a result, the parties are hereby ordered to meet and confer about the settlement and file a revised settlement proposal on or before April 8, 2016.

SO ORDERED.

Dated: March 24, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge